NUMBER 13-08-00431-CR

COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI - EDINBURG 
                                                                                                                      
                                                                 
CLIFFORD WAYNE GARDNER,                                              Appellant,

v.
 
THE STATE OF TEXAS,                                                       Appellee.
                                                                                                                                      

On appeal from the 24th District Court
of Jackson County, Texas.
                                                                                                                      

  MEMORANDUM OPINION
 
Before Chief Justice Valdez and Justices Benavides and Vela
 Memorandum Opinion by Chief Justice ValdezAppellant, Clifford Wayne Gardner, was convicted by a Jackson County jury of
unlawful delivery of a controlled substance, cocaine, in an amount of more than one gram
but less than four grams, a second-degree felony. See Tex. Health & Safety Code Ann.
§ 481.112(c) (Vernon Supp. 2009). The indictment contained four enhancement
paragraphs alleging that Gardner had four prior felony convictions. After finding that all
four enhancement paragraphs were true, the jury assessed punishment at life
imprisonment in the Institutional Division of the Texas Department of Criminal Justice with
no fine. See Tex. Penal Code Ann. § 12.42(d) (Vernon Supp. 2009) (providing that “if it
is shown on the trial of a felony offense other than a state jail felony punishable under
Section 12.35(a) that the defendant has previously been finally convicted of two felony
offenses . . . on conviction he shall be punished by imprisonment in the Texas Department
of Criminal Justice for life, or for any term of not more than 99 years or less than 25
years”). By two issues, which can be categorized as one, Gardner asserts that his
conviction was not supported by sufficient evidence because the conviction is based upon
uncorroborated accomplice-witness and covert-witness testimony. We affirm.
I. Factual and Procedural Background
          On the evening of April 20, 2005, James Rivera, while serving as an informant for
law enforcement, allegedly purchased 2.5 grams of cocaine from Gardner. Rivera testified
that he had worked as an informant for law enforcement on two other occasions and that
he was paid $100 for his participation in the underlying transaction. In organizing the
transaction, Rivera arranged for an acquaintance of his, April Matulik, to contact Gardner
so that Rivera, at the direction of law enforcement, could purchase the cocaine. Rivera
agreed to bring Matulik along when he met with Gardner because Matulik desired to
purchase some cocaine for herself. Prior to picking up Matulik, Rivera contacted Ron
Garrett, a police officer formerly employed by the Edna Police Department. Officer Garrett
met with Rivera at a local transfer station, otherwise known as the city dump. While there,
Officer Garrett and Jackson County Deputy Sheriff Joe Garcia searched Rivera’s clothing,
person, and vehicle for contraband, and Rivera fitted himself with an audio recording
device that was hidden on his inner thigh. Once Rivera was fitted with the audio recording
device, the officers tested the device to ensure that it worked properly. After concluding
that the device was in good working order, the officers provided Rivera with $200 to make
the cocaine purchase.
          Rivera picked up Matulik at her apartment. Matulik provided Rivera with directions
to the place where they would meet up with “Seven” or “Seven Days” to purchase cocaine. 
At trial, several witnesses testified that Gardner’s street name was “Seven” or “Seven
Days.” Rivera’s conversations with Matulik and his interaction with Gardner were recorded
by the hidden audio recording device. The officers proceeded to the meeting place and
parked about three-tenths of a mile away from where the transaction occurred; however,
Officer Garrett admitted that, despite their proximity to the meeting place, they were not
able to see much of the transaction. In any event, the hidden audio recording device
demonstrated that Rivera purchased ten rocks of crack cocaine from Gardner in exchange
for the $200 that was provided by law enforcement. After purchasing the cocaine from
Gardner, Rivera conversed with Gardner while Matulik also purchased some cocaine for
use in her crack pipe. Gardner agreed to allow Rivera to contact him directly for any future
drug purchases. Once the meeting had concluded, Rivera dropped off Matulik at her
apartment and drove to the dump to meet with Officer Garrett for debriefing. Once he
arrived at the dump, Rivera turned over the ten rocks of crack cocaine and described the
particulars of the meeting with Gardner to Officer Garrett.
          Approximately two weeks after the transaction, Rivera identified Gardner from a
photo lineup as the individual who had sold him the cocaine. In addition, Matulik confirmed
that Gardner had sold cocaine to Rivera on this occasion. Gardner was subsequently
arrested. Tests conducted on the substances that Rivera received from Gardner revealed
that the substances constituted 2.5 grams of cocaine.
          After a jury trial, Gardner was convicted of unlawful delivery of a controlled
substance. See Tex. Health & Safety Code Ann. § 481.112(c). Because he had been
convicted previously of four felonies, the jury sentenced Gardner to life imprisonment with
no fine. See Tex. Penal Code Ann. § 12.42(d). Gardner later filed a motion for new trial
and a motion in arrest of judgment; however, those motions were overruled by operation
of law. See Tex. R. App. P. 21.8(c). This appeal ensued.  
II. Standard of Review
A.       The Accomplice-Witness Rule
          Article 38.14 of the Texas Code of Criminal Procedure provides that a defendant
cannot be convicted of a crime based solely on the testimony of an accomplice unless that
testimony is “corroborated by other evidence tending to connect the defendant with the
offense committed.” Tex. Code Crim. Proc. Ann. art. 38.14 (Vernon 2005). The Texas
Court of Criminal Appeals has described the accomplice-witness rule as “a statutorily
imposed review” that “is not derived from federal or state constitutional principles that
define the legal and factual sufficiency standards.” Druery v. State, 225 S.W.3d 491, 498
(Tex. Crim. App. 2007). We evaluate the “sufficiency of corroboration evidence under the
accomplice-witness rule” by first eliminating the accomplice’s testimony from consideration
and then examining the remainder of the record for non-accomplice witness “evidence that
tends to connect the accused with the commission of the crime.” See Tex. Code Crim.
Proc. Ann. art. 38.14; see also Malone v. State, 253 S.W.3d 253, 257 (Tex. Crim. App.
2008). In applying this standard, we view the evidence in the light that most favors the
jury’s verdict. Brown v. State, 270 S.W.3d 564, 567 (Tex. Crim. App. 2008) (citing Gill v.
State, 873 S.W.2d 45, 48 (Tex. Crim. App. 1994)).
          In Patterson v. State, we noted that “[t]he tends-to-connect standard presents a low
hurdle for the State.” 204 S.W.3d 852, 859 (Tex. App.–Corpus Christi 2006, pet. ref’d). 
“We consider the combined weight of the non-accomplice evidence, even if [that evidence]
is entirely circumstantial.” Claxton v. State, 124 S.W.3d 761, 765 (Tex. App.–Houston [1st
Dist.] 2003, pet. ref’d). In fact, “[t]he non-accomplice evidence need not be sufficient in
itself to establish the accused’s guilt beyond a reasonable doubt. Nor is it necessary for
the non-accomplice evidence to directly link the accused to the commission of the offense.” 
Hernandez v. State, 939 S.W.2d 173, 176 (Tex. Crim. App. 1997) (citation omitted); see
Dowthitt v. State, 931 S.W.2d 244, 249 (Tex. Crim. App. 1996) (“While the accused’s mere
presence in the company of the accomplice before, during, and after the commission of
the offense is insufficient by itself to corroborate accomplice testimony, evidence of such
presence, coupled with other suspicious circumstances, may tend to connect the accused
to the offense.”); see also Gill, 873 S.W.2d at 48; Munoz v. State, 853 S.W.2d 558, 559
(Tex. Crim. App. 1993). Further, “unlike extrajudicial confessions, testimony of an
accomplice need be corroborated only as to facts ‘tending to connect the defendant with
the offense committed’ and not as to the corpus delecti itself.” Castillo v. State, 221
S.W.3d 689, 691 (Tex. Crim. App. 2007) (quoting Gribble v. State, 808 S.W.2d 65, 71 n.13
(Tex. Crim. App. 1990)); see Munoz, 853 S.W.2d at 559; see also Taylor v. State, 10
S.W.3d 673, 685 (Tex. Crim. App. 2001). 
          In some instances, insignificant circumstances afford the most satisfactory evidence
of guilt and corroboration of the accomplice-witness’s testimony. Patterson, 204 S.W.3d
at 860; see Dowthitt, 931 S.W.2d at 249; Munoz, 853 S.W.2d at 559. “In applying the test
of the sufficiency of the corroboration, each case must be considered on its own facts and
circumstances.” Reed v. State, 744 S.W.2d 112, 126 (Tex. Crim. App. 1988). 
“Independent evidence [that] generally tends to prove that an accomplice witness’s version
of events is true, rather than the [defendant’s version], is considered corroborative, even
if it concerns a mere ‘detail,’ as opposed to a substantive link between the defendant and
commission of the offense.” Beathard v. State, 767 S.W.2d 423, 430 (Tex. Crim. App.
1989). “The corroborating evidence may be [either] circumstantial or direct.” Reed, 744
S.W.2d at 126; Granger v. State, 683 S.W.2d 387, 392 (Tex. Crim. App. 1984). Because
each case must rest on its own facts, corroboration does not require a set quantum of
proof. Malone, 253 S.W.3d at 257. “The accomplice witness rule is satisfied if there is
some non-accomplice evidence which tends to connect the accused to the commission of
the offense alleged in the indictment.” Hernandez, 939 S.W.2d at 176 (emphasis in
original); see Trevino v. State, 991 S.W.2d 849, 852 (Tex. Crim. App. 1999) (noting that
the absence of "smoking gun" evidence does not invalidate evidence that connects the
defendant to the offense).
B.       The Covert-Witness Rule
          Article 38.141 of the code of criminal procedure provides that:
 
A defendant may not be convicted of an offense under Chapter 481, Health
and Safety Code, on the testimony of a person who is not a licensed peace
officer or a special investigator but who is acting covertly on behalf of a law
enforcement agency or under the color of law enforcement unless the
testimony is corroborated by other evidence tending to connect the
defendant with the offense committed.
 
Tex. Code Crim. Proc. Ann. art. 38.141 (Vernon 2005). Texas courts have held that we
apply the same standards governing the accomplice-witness rule to the covert-witness rule;
thus, we must ignore the testimony of the informant, or covert witness, and examine the
record to see if any other evidence tended to connect the defendant with the offense
committed. See Smith v. State, 211 S.W.3d 476, 478 (Tex. App.–Amarillo 2006, no pet.)
(citing Dennis v. State, 151 S.W.3d 745, 749 (Tex. App.–Amarillo 2004, pet. ref’d); Young
v. State, 95 S.W.3d 448, 451 (Tex. App.–Houston [1st Dist.] 2002, pet. ref’d)); Cantelon
v. State, 85 S.W.3d 457, 459-60 (Tex. App.–Austin 2002, no pet.) (concluding that article
38.141 requires the same standard of corroboration for an informant witness as that of
article 38.14, the accomplice-witness rule); see also Jeffrey v. State, No. 13-03-381-CR,
2004 Tex. App. LEXIS 2276, at **8-10 (Tex. App.–Corpus Christi Mar. 11, 2004, no pet.)
(mem. op., not designated for publication) (same). Furthermore, we review the
corroborating evidence in the light most favorable to the jury’s verdict. Smith, 211 S.W.3d
at 478 (citing Dennis, 151 S.W.3d at 749).
III. Analysis
          In his sole issue on appeal, Gardner argues that the evidence supporting his
conviction is insufficient because the evidence provided by Rivera and Matulik was not
sufficiently corroborated. Gardner further argues that accomplice-witness testimony may
not be corroborated by covert-witness testimony and vice versa. The State asserts that
the record contains sufficient evidence tending to connect Gardner to the offense, thus
corroborating both the accomplice-witness testimony and the covert-witness testimony
provided at trial.
 
A.       Matulik’s Status as an Accomplice Witness and Rivera’s Status as a Covert
Witness
 
          At the outset of our analysis, we note that the parties do not dispute that: (1) Matulik
was an accomplice to the underlying offense; and (2) Rivera was a covert witness. See
Paredes v. State, 129 S.W.3d 530, 536 (Tex. Crim. App. 2004) (“An accomplice
participates with a defendant before, during, or after the commission of a crime and acts
with the required culpable mental state.”); see also Simmons v. State, 205 S.W.3d 65, 72
(Tex. App.–Fort Worth 2006, no pet.) (noting that covert witnesses or informants are
individuals who work with law enforcement for self-interested reasons, often for
compensation or to have charges against them reduced or dismissed). As such, we must
ignore the testimony of both Matulik and Rivera to assess whether the remaining evidence
in the record tends to connect Gardner to the underlying offense and thus corroborates
Matulik and Rivera’s testimony. See Malone, 253 S.W.3d at 257; Smith, 211 S.W.3d at
478. 
B.       Corroboration of Matulik and Rivera’s Testimony
          The record reflects that the State called several witnesses to corroborate the
testimony provided by both Rivera and Matulik, including Officer Garrett, Ruben Rendon
Jr., a drug section supervisor for the Texas Department of Public Safety crime lab in
Corpus Christi, and Ronnie Kovar, a jailer with the Jackson County Sheriff’s Office. Officer
Garrett described the contents of the recorded audiotape of the purported transactions
between Gardner, Rivera, and Matulik.


 Officer Garrett testified that he and Deputy Garcia
used the recording device to listen to the conversations that Rivera had with both Gardner
and Matulik as they were happening. Officer Garrett also testified as to his conversations
with Rivera at the debriefing, where Rivera recounted that Gardner had sold him ten rocks
of cocaine and gave Officer Garrett the ten rocks of cocaine that had been allegedly
purchased from Gardner. Officer Garrett noted that Rivera had worked for law
enforcement on two prior occasions, which indicated that law enforcement trusted Rivera. 
Furthermore, Officer Garrett stated that: (1) he and Deputy Garcia strip-searched Rivera
prior to the transaction to make sure that he did not have any contraband; (2) Rivera
attached the recording device to himself; and (3) Officer Garrett and Deputy Garcia
ensured that the recording device was working properly prior to the meeting. Officer
Garrett and Deputy Garcia followed Rivera as he traveled to pick Matulik up and later to
the location where Rivera and Matulik met Gardner. However, Officer Garrett admitted that
he positioned the car that he and Deputy Garcia were in three-tenths of a mile away from
the location of the transaction, which allowed for a clear reception for the audiotape but
prevented them from clearly observing the purported transaction. Officer Garrett testified
that Matulik verified in his presence that Gardner had delivered the cocaine to Rivera and,
approximately two weeks after buying cocaine from Gardner, Rivera came into the police
station and identified Gardner from a photographic lineup as the individual who had sold
him the cocaine. 
          Rendon testified that he tested the substances that Rivera provided to Officer
Garrett and concluded that the substances amounted to 2.5 grams of cocaine. Kovar
stated that: (1) he had known Gardner as an inmate at the county jail for one-and-a-half
to two years; (2) he spoke with Gardner on a daily basis; and (3) he was very familiar with
the sound of Gardner’s voice. After listening to the recorded audiotape submitted into
evidence by the State, Kovar identified the voice of the individual selling the cocaine to
Rivera as Gardner’s. Moreover, both Officer Garrett and Kovar identified Gardner by his
street names of “Seven” and “Seven Days.” 
          As noted earlier, Gardner argues on appeal that the State failed to sufficiently
corroborate the testimony of Matulik and Rivera. However, based on our review of the
non-accomplice and non-covert evidence in the light most favorable to the jury’s verdict,
we conclude that the State has provided some non-accomplice and non-covert evidence
that tends to connect Gardner to the commission of the offense alleged in the indictment. 
See Brown, 270 S.W.3d at 568; Smith, 211 S.W.3d at 478; see also Tex. Code Crim.
Proc. Ann. arts. 38.14, 38.141. Gardner also argues that Kovar’s testimony was not
sufficiently corroborative of Rivera and Matulik’s testimony because it was unreliable. 
However, the resolution of Kovar’s testimony was within the province of the jury as the
exclusive judge of the credibility of the witness and of the weight to be given to the
testimony. See Brown, 270 S.W.3d at 568 (citing Jones v. State, 944 S.W.2d 642, 647
(Tex. Crim. App. 1996)). Because the State has provided some evidence connecting
Gardner to the commission of the offense, we further conclude that the evidence
corroborating Matulik and Rivera’s testimony is sufficient, thus satisfying the corroboration
requirements of articles 38.14 and 38.141. See Tex. Code Crim. Proc. Ann. arts. 38.14,
38.141; see also Malone, 253 S.W.3d at 257; Dennis, 151 S.W.3d at 749 (finding the
corroborating evidence sufficient when the informant and his vehicle were searched prior
to the purchase; the defendant was observed coming out of a house and approaching the
informant’s vehicle; the informant called the defendant by name; words on the audio
recording indicated the exchange of a substance for $400; the officer identified one of the
voices on the tape as the defendant’s; and when the informant returned to meet the officer,
he gave him the cocaine); Jefferson v. State, 99 S.W.3d 790, 792-93 (Tex. App.–Eastland
2003, pet. ref’d) (holding the corroborating evidence sufficient even though the informant
went by herself to a house to make the purchase because she had been searched prior
to leaving; the officer watched her go into the house; the informant purchased $150 worth
of cocaine; a recording was made of the transaction; the officer testified that the
defendant’s voice was on the recording; and the informant gave the officer cocaine when
she returned to his vehicle). Accordingly, we overrule Gardner’s sole issue on appeal.


 
IV. Conclusion
          Having overruled Gardner’s sole issue on appeal, we affirm the judgment of the trial
court.
 
                                                                           ________________________
ROGELIO VALDEZ
                                                                           Chief Justice 
Do not publish. 
Tex. R. App. P. 47.2(b)
Delivered and filed the 
18th day of March, 2010.